UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -x

ROBERT CORWIN, on behalf of          :
himself and all others similarly
situated,                            :

             Plaintiff,    :       07 Civ. 6728 (DC)

      - against -                   :

BERND R. SEIZINGER et al.,           :

            Defendants.   :

- - - - - - - - - - - - - - - - -x

ISTVAN TEMESFOI, on behalf of        :
himself and all others similarly
situated,                            :

             Plaintiff,    :       **MEMORANDUM DECISION**

      - against -                   :       07 Civ. 7016 (DC)

GPC BIOTECH AG et al.,               :

            Defendants.   :

- - - - - - - - - - - - - - - - -x

AUDREY DANG, individually and on     :
behalf of all others similarly
situated,                            :

             Plaintiff,    :       07 Civ. 7476 (DC)

      - against -                   :

GPC BIOTECH AG et al.,               :

            Defendants.   :

- - - - - - - - - - - - - - - - -x

**APPEARANCES:**   (See last page)

**CHIN, D.J.**

       In these three securities cases, plaintiffs allege that

defendants violated §§ 10(b) and 20(a) of the Securities Exchange

Act of 1934 and Rule 10b-5 promulgated thereunder.  Plaintiffs contend that defendants made material misrepresentations that artificially inflated the price of the stock of GPC Biotech AG ("GPC"), a publicly traded biopharmaceutical company that specializes in the development of anti-cancer drugs.  Plaintiffs sue, in all three cases, on behalf of a class of all persons who purchased or otherwise acquired GPC securities during the period from December 5, 2005 through July 24, 2007 (the "Class Period") and who suffered damages as a result.  (Corwin Compl. ¶ 1; Temesfoi Compl. ¶ 51; Dang Compl. ¶¶ 1, 52).

Before the Court are three competing applications from shareholders seeking appointment as lead plaintiff and the appointment of their attorneys as lead counsel.  All three sets of shareholders also seek consolidation of the three actions, as well as any subsequently-filed related actions.

## DISCUSSION

### A.    Consolidation

The requests for consolidation are granted.  All three cases involve securities claims brought on behalf of purchasers of GPC securities during the Class Period.  The cases assert similar claims based on the same legal theories and the same underlying facts.  No opposition to consolidation has been filed. Hence, the three cases are hereby consolidated for all purposes. See, e.g., Constance Sczesny Trust v. KPMG LLP, 223 F.R.D. 319, 322 (S.D.N.Y. 2004) (consolidating nine related securities class actions).

- 2 -

**B.    Appointment of Lead Plaintiff**

   **1.    Applicable Law**

          The Private Securities Litigation Reform Act of 1995
(the "PSLRA") requires the court to appoint a "lead plaintiff" in
private securities class actions.  15 U.S.C. § 78u-4(3)(B)(i).
The "lead plaintiff" is "the member or members of the purported
plaintiff class that the court determines to be most capable of
adequately representing the interests of class members."  Id.
This provision of the PSLRA was intended to ensure that parties
with "significant financial interests in the litigation" would
oversee securities class actions and control the management of
such suits, including the selection of counsel.  See Pirelli
Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBrance &
Co., 229 F.R.D. 395, 402 (S.D.N.Y. 2004) (quoting In re Oxford
Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 43-44 (S.D.N.Y.
1998) (quoting H.R. Rep. No. 104-369, at 32 (1995) (Conf. Rep.).,
reprinted in 1996 U.S.C.C.A.N. at 731)).

          The PSLRA sets forth detailed procedures for the filing
of securities class actions and the selection of a lead
plaintiff.

          First, each plaintiff seeking to serve as a
representative party on behalf of a class must file, with the
complaint, a sworn certification that makes certain
representations and disclosures, including that the plaintiff has
reviewed the complaint and authorized its filing, the plaintiff
did not purchase the securities at the direction of counsel or to

participate in a lawsuit, and setting forth all transactions of the plaintiff in the securities during the class period.  15 U.S.C. § 78u-4(a)(2).

Second, the plaintiff who files the first action must publish, within twenty days after the complaint is filed, a notice informing class members of the pendency of the action and their right to move, within sixty days after publication of the notice, for appointment as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A).  Motions to be appointed lead plaintiff may be made by any purported class member, including one not individually named as a plaintiff in any complaint.  15 U.S.C. § 78u-4(a)(3)(B)(i).

Third, within ninety days after publication of the notice or, where multiple actions are filed, as soon as practicable after the consolidation of multiple related cases (if consolidation occurs after the ninety-day period), the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B).

The determination of the "most capable" class representative entails a two-step process.

First, the PSLRA sets forth a rebuttable presumption that "the most adequate plaintiff" is "the person or group of persons" that (a) filed the initial complaint or moved for appointment as lead plaintiff, (b) has "the largest financial

interest in the relief sought by the class," and (c) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Hence, the court must first determine which member (or group of members) of the class is entitled to this statutory presumption. <u>See, e.g.</u>, <u>Constance Sczesny Trust</u>, 223 F.R.D. at 323. In deciding which proposed lead plaintiff has "the largest financial interest in the relief sought by the class," courts consider four factors: "(i) the gross number of shares purchased; (ii) the net number of shares purchased; (iii) the net funds spent; and (iv) the net loss." <u>In re Initial Pub. Offering Sec. Litig.</u>, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (citing <u>In re Crayfish Co. Sec. Litig</u>, No. 00 Civ. 6766, 2002 WL 1268013, at *4 (S.D.N.Y. June 6, 2002)); <u>accord</u> <u>Constance Sczesny Trust</u>, 223 F.R.D. at 323 (quoting <u>Ferrari v. Impath, Inc.</u>, 03 Civ. 5667, 2004 WL 1637053, at *4 (S.D.N.Y. July 20, 2004) (citing <u>In re Olsten Corp. Sec. Litig.</u>, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998))). As for the requirements of Rule 23, at this stage a proposed lead plaintiff need only make a "preliminary showing" that it will satisfy the typicality and adequacy requirements of Rule 23. <u>In re Initial Pub. Offering Sec. Litig.</u>, 214 F.R.D. at 121 (quoting <u>In re Crayfish Co. Sec. Litig</u>, 2002 WL 1268013, at *4); <u>see also</u> <u>Constance Sczesny Trust</u>. 223 F.R.D. at 323-24.

Second, once the court determines which class member (or group of members) is entitled to the presumption, other members of the purported class may try to rebut the presumption

by showing that the presumptive lead plaintiff will not fairly
and adequately protect the interests of the class or is, because
of "unique defenses," incapable of adequately representing the
class.  Id.; see 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Court has the discretion to appoint more than one
lead plaintiff and can aggregate the losses suffered by the
members of a group of investors.  Constance Sczesny Trust. 223
F.R.D. at 323.

### 2.  **Application**

The first of the three cases, Corwin, was filed on July
26, 2007.  Attached to the Corwin complaint was the certification
of plaintiff Robert Corwin declaring that he had purchased 200
shares of GPC stock and otherwise making the representations
required by the PSLRA, 15 U.S.C. § 78u-4(a)(2).  (See Corwin
Compl. ¶ 14 & Att.).

The same day (and well within twenty days of the filing
of the complaint), Corwin published a notice informing class
members of the pendency of the action and their right to move,
within sixty days after publication of the notice, for
appointment as lead plaintiff, as required by the PSLRA, 15
U.S.C. § 78u-4(a)(3)(A).  (See Kaboolian Decl. ¶ 2 & Ex. A).

Within sixty days after publication of the notice of
the Corwin action, the three instant applications for appointment
as lead plaintiff (or plaintiffs) were filed:

> -- Axxion S.A. Luxemburg ("Axxion"), through its
> Akrobat Fund-Value, purchased 150,000 shares of

GPC stock and sold none during the Class Period. (Ellman Decl. Ex. A).[1] It spent some $3,963,658 to purchase these shares. (Id.). It claims losses of $1,832,888.35. (Id. at Ex. B). Axxion is represented by Labaton Sucharow LLP.

--  Agamemnon Chua, Dhruvajyoti Biswas, Koernig Kron, and Frank Von Tempelhoff (collectively, the "Chua Group") purchased a total of 59,410 shares of GPC stock and sold 47,910 of those shares during the Class Period. (Chua Group Mem. 1; Kaboolian Decl. Ex. F).[2] The Chua Group spent net funds of approximately $278,999. (See Kaboolian Decl. Ex. F).[3] All told, the Chua Group claims losses of

---

[1]  Axxion is an investment firm established under Luxemburgian law. It manages assets totaling approximately 1.7 billion euros. It establishes and manages investment funds, such as the Akrobat Fund, which are separate legal entities from Axxion and other funds managed by Axxion, and has authority to sue on behalf of its funds. The Akrobat Fund-Value and the Akrobat Fund-Europa are "special assets/partial funds in the umbrella Akrobat Fund," and are "legally independent entities." Axxion is proceeding in this case only on behalf of its Akrobat Fund-Value, but the Akrobat Fund-Europa also had certain purchases and sales in GPC stock during the Class Period and claims losses of some $650,335.96. (Mertes 10/13/07 Decl. ¶¶ 2-6 & Ex. A).

The Akrobat Fund-Value sold 104,000 shares of its GPC stock after the Class Period. (Ellman Decl. Ex. A).

[2]  The Chua Group sold another 9,400 shares of its GPC stock after the Class Period. (Kaboolian Decl. Ex. F)

[3]  Exhibit F to the Kaboolian Declaration does not provide a total for net sums spent, and some amounts are given in dollars and some in euros. The Court converted the euros to dollars using, for simplicity, an exchange rate of 1.3. The Court then added up the net amounts spent by each member of the group

approximately $174,351. The Chua Group is
represented by Abbey Spanier Rodd & Abrams LLP.

--   Istvan Temesfoi, Stefan Ganswindt, Tobias Wenk,
     Elmar Rempel, and Matthias Lenardt (collectively,
     the "Temesfoi Group") purchased (for themselves or
     on behalf of relatives) a total of 67,518 shares
     of GPC stock and sold 31,088 of those shares
     during the Class Period. (Stone Affirmation Ex.
     2).[4] The Temesfoi Group spent net funds of
     approximately $1,280,108. (Id.).[5] The Temesfoi
     Group also bought and sold certain options in GPC
     stock. (Id.). All told, the Temesfoi Group
     claims losses of approximately $928,150.40.
     (Id.). The Temesfoi Group is represented by
     Shalov Stone Bonner & Rocco LLP.

I consider which of the three candidates for lead
plaintiff is entitled to the statutory presumption that it is
"the most adequate plaintiff."

Based on the available information, I conclude that
Axxion has "the largest financial interest in the relief sought

---

(amounts spent on purchases minus amounts received from sales
during the Class Period) to obtain a total net amount in dollars.

[4]   The Temesfoi Group sold an additional 17,000 shares of
the GPC stock after the Class Period. (Stone Affirmation Ex. 2).

[5]   Exhibit 2 to the Stone Affirmation does not provide a
total for net funds expended, and most of the figures are in
euros. The Court has calculated net funds expended during the
Class Period following the same methodology used for the Chua
Group.

by the class." Of the three competing groups, it purchased the most shares, both on a gross basis and on a net basis, during the Class Period. It spent, by far, the most net funds of the three -- $3.9 million as compared to $1.28 million for the Temesfoi Group and only $278,999 for the Chua Group. It claims, again by far, the greatest net loss of the three -- almost double the loss claimed by the Temesfoi Group and more than ten times the amount claimed by the Chua Group. I also conclude, preliminarily, that Axxion meets the typicality and adequacy requirements of Rule 23. Axxion appears to have a claim typical of other members of the proposed class -- it purchased or acquired GPC securities during the Class Period at prices allegedly artificially inflated by defendants' purported materially false and misleading statements and/or omissions, and suffered damages when the truth was disclosed to the market. Axxion's interests are aligned with the interests of other shareholders and there appear to be no conflicts. Axxion is a sophisticated institutional investor with the resources necessary to litigate a securities class action, and it is represented by able and experienced counsel. Accordingly, Axxion is entitled to the statutory presumption.

        Finally, I consider whether any other class members have rebutted the presumption by showing that Axxion will not adequately and fairly protect the interests of the proposed class. I conclude they have not.

        The Temesfoi Group argues that Axxion is an inadequate and atypical plaintiff, based largely on what it contends is a

"problematic and inconsistent" certification.  Although Axxion's
initial certification did not completely track the language of
the PSLRA and it did not adequately explain the relationship
between Axxion and the Akrobat Fund-Value, the Temefoi Group's
concerns are largely speculative.  In any event, the concerns
have been adequately addressed in Axxion's follow-up declaration,
which explains the relationship between Axxion and the Akrobat
Fund-Value and confirms that Axxion has the authority to sue on
behalf of its funds.  See Kaplan v. Gelfond, 240 F.R.D. 88, 95
(S.D.N.Y. 2007) (investment manager has standing to sue on behalf
of fund investors as long as it has attorney-in-fact authority
and unrestricted decision-making authority).  Although Axxion did
not initially disclose its GPC holdings in its Akrobat Fund-
Europa, the Akrobat Fund-Value and the Akrobat Fund-Europa are
legally independent entities and Axxion was not required to
include the Europa holdings in its application.  If they were
included, Axxion's alleged losses would be even larger.

       The Chua Group argues that it is the most adequate
plaintiff because it includes both United States and foreign
investors,[6] while Axxion and the Temesfoi Group are foreign
investors that purchased securities of a foreign company on the
German exchange.  It contends that both Axxion and the Temesfoi

       [6]    Apparently, Chua and Biswas are U.S. investors.  (Chua
Reply Mem. 2).  Chua, however, purchased only 200 shares during
the Class Period (selling none), for a total net expenditure of
$5,314.  (Kaboolian Decl. Ex. B).  Biswas purchased a total of
5,000 shares during the Class Period, selling 2,000 of those
share during the Class Period, for a net amount expended of some
$102,830.  (Id. at Ex. F).

Group are potentially subject to a defense of lack of subject
matter jurisdiction.  Alternatively, the Chua Group argues that
Chua and Biswas should be appointed co-lead plaintiffs with one
of the other proposed lead plaintiffs.

        The Chua Group's arguments are rejected.  Other courts
in this District have appointed foreign investors as class
representatives in securities class actions that included both
foreign and U.S. purchasers of a foreign company's shares.  See,
e.g., In re Nortel Networks Corp. Sec. Litig., No. 01 Civ. 1855
(RMB), 2003 WL 22077464 (S.D.N.Y. Sept. 8, 2003) (certifying
class action brought by Canadian union pension trust fund
alleging fraud in connection with securities of Canadian
company).  While defendants may raise a subject matter
jurisdiction defense, such a defense would not be "unique" to
Axxion, as it appears that many (if not most) of the class
members would be foreign investors.  Axxion elected to file suit
here, and there is no reason to doubt its ability to respond to a
motion to dismiss for lack of subject matter jurisdiction, should
such a motion be made.

        Moreover, without prejudging the issue, the Court notes
that plaintiffs have alleged substantial acts in the United
States in furtherance of the alleged fraud.  For example, the
Corwin complaint alleges that GPC maintains clinical facilities
in the United States, its lead product (Satraplatin) was and is
under review by the United States Federal Drug Administration
(the "FDA"), GPC makes filings with the United States Securities

and Exchange Commission (the "SEC"), and certain GPC securities
are traded on an American exchange, the NASDAQ.  (Corwin Compl.
¶¶ 3, 15, 22).  Plaintiffs further allege that defendants had
been trying to bring Satraplatin to market for several years and
faced financial and other pressures, and that, during the Class
Period, they made public statements falsely suggesting that FDA
approval of the marketing of Satraplatin was coming soon when
they purportedly knew, from facts and developments in the FDA
approval process that they failed to disclose, that FDA approval
would not be coming any time soon.  (Dang Compl. ¶ 3; Corwin
Compl. ¶¶ 2-5).  The alleged misstatements and omissions involved
the FDA approval process, and thus necessarily had a substantial
connection to the United States.

        As for the Chua Group's alternative suggestion that I
appoint two of its members -- Chua and Biswas -- co-lead
plaintiffs, I decline to do so.  Chua's interest is miniscule, as
he purchased only 200 shares.  While Biswas's interest is
somewhat more substantial (he purchased 5,000 and sold 2,000
shares during the Class Period), it still is relatively minor.
It would defeat the goals of the PSLRA to take two members of one
proposed group with minor or relatively minor holdings and simply
tack them on as co-lead plaintiffs when I am not otherwise
satisfied that they indeed qualify as the "most capable of
adequately representing the interests of class members."  15
U.S.C. § 78u-4(a)(3)(B).

        Accordingly, the statutory presumption has not been

overcome, and I will appoint Axxion as the lead plaintiff in these securities class actions. Axxion's choice of counsel is approved.

## CONCLUSION

For the reasons set forth above, these three actions are consolidated, Axxion is appointed lead plaintiff, and its choice of counsel is approved.

The Court will enter the proposed order previously submitted by Axxion.

SO ORDERED.

Dated:    New York, New York
          January 8, 2008

                                   DENNY CHIN
                                   United States District Judge

- 13 -

**APPEARANCES**

For Plaintiff Axxion:

        LABATON SUCHAROW LLP
            By:  Christopher J. Keller, Esq.
                Ira A. Schochet, Esq.
        140 Broadway
        New York, NY  10005


For Plaintiff The Chua Group:

        ABBEY SPANIER RODD & ABRAMS LLP
            By:  Nancy Kaboolian, Esq.
        212 East 39th Street
        New York, NY  10016


For Plaintiff The Temesfoi Group:

        SHALOV STONE BONNER & ROCCO LLP
            By:  Amanda Claire Scuder, Esq.
                Ralph M. Stone, Esq.
                Thomas George Ciarlone, Jr., Esq.
        485 Seventh Avenue, Suite 1000
        New York, NY  10018


For Defendants GPC Biotech AG, Bernd Seizinger, Martine George, and Marcel Rozencweig:

        MORGAN LEWIS & BOCKIUS LLP
            By:  Bernard J. Garbutt III, Esq.
        101 Park Avenue
        New York, NY  10178