UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x
                                                       :
IN RE GPC BIOTECH AG                                   :  Civil Action No.: 1:07-cv-06728 (DC)
SECURITIES LITIGATION                                  :
                                                       :
------------------------------------------------------ x

### DECLARATION OF MARK S. GOLDMAN, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Mark S. Goldman declares, pursuant to 28 U.S.C. § 1746, as follows:

1.  I am Of Counsel to the law firm Labaton Sucharow LLP ("Labaton"), attorneys for Lead Plaintiff Axxion S.A. Luxemburg ("Axxion"), and for plaintiff Agamemnon Chua ("Chua") (collectively "Plaintiffs") in the above-captioned action. I have been admitted *pro hac vice* in this case. I respectfully submit this Declaration in support of Plaintiffs' Motion For Leave To File The Consolidated Amended Class Action Complaint (the "Amended Complaint").[1]

2.  On July 26, 2007, the first of three class action complaints was filed against defendants GPC Biotech AG ("GPC" or the "Company"), Bernard R. Seizinger, Mirko Scherer, Elmar Maier, and Sebastian Meier-Ewert (collectively "Defendants") for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. By order dated January 8, 2008, the Court appointed Axxion as Lead Plaintiff and its counsel, Labaton, as Lead Counsel (hereinafter "Labaton" or "Lead Counsel").

---

[1] The Amended Complaint is attached as Exhibit 1 to the Plaintiffs' Motion For Leave To File The Consolidated Amended Class Action Complaint.

3. Upon its selection as Lead Counsel, Labaton commenced an in-depth investigation of the events leading up to the FDA's July 24, 2007 decision not to approve GPC's application for accelerated approval of satraplantin at that time. In connection with this investigation, Labaton attorneys and support staff, including investigators and legal assistants, interviewed former GPC employees, reviewed press releases issued by the Company, read analysts reports prepared by investment bankers following GPC, read regulatory reports filed by the Company, and reviewed relevant information then present on the website of the Food and Drug Administration ("FDA").

4. As part of this investigation and at the direction of Lead Counsel, Plaintiffs' counsel sought additional information from the FDA though a series of Freedom of Information Act ("FOIA") requests. These requests were also the subject of telephonic discussions between representatives of the FDA and counsel for the proposed class. The FDA then, and now, refused to comply with Plaintiffs' FOIA requests, citing its internal rule not to comply with FOIA requests unless the drug application is approved. Annexed hereto as Exhibit A is the FOIA correspondence.

5. Utilizing the information gathered during the investigation by its counsel, and the reasonable inferences drawn from the facts uncovered, on March 12, 2008, Plaintiffs filed their Consolidated Class Action Complaint (the "Consolidated Complaint") on behalf of all persons or entities, except for Defendants, who purchased GPC securities from December 5, 2005 through July 14, 2007 (the "Class").

6. On May 14, 2008, Defendants moved to dismiss Plaintiffs' Consolidated Class Action Complaint ("Motion to Dismiss"). In their Motion to Dismiss, Defendants challenged, *inter alia,* Plaintiffs' interpretation of the FDA's statement in July, 2007 that it had "no

experience" with the progression free survival ("PFS") endpoint used in the clinical trial which supported the Company's new drug application.

7.  On June 23, 2008, counsel for Defendants sent a letter to Lead Counsel again challenging certain claims set forth in the Complaint regarding the FDA's statement that it had "no experience" with the PFS endpoint. In their letter, Defendants demanded that Plaintiffs withdraw any allegation in the Complaint that the FDA warned GPC that it would not grant accelerated approval based on a PFS endpoint alone. Defendants claimed that they had "objective and incontrovertible evidence" disproving the claim that the FDA rejected PFS as an appropriate basis for accelerated approval. Annexed hereto as Exhibit B is the letter dated June 23, 2008.

8.  Two days later, on June 25, 2008, Lead Counsel responded to Defendants' letter. In their letter, Lead Counsel asked to see the evidence Defendants claimed to have reviewed which supported a different interpretation of the FDA's July 2007 statement that it had "no experience" with the PFS endpoint. Annexed hereto as Exhibit C is the letter dated June 25, 2008. Defendants did not provide the information Lead Counsel requested.

9.  On June 30, 2008, Plaintiffs filed their Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint ("Opposition Memorandum"). In their Opposition Memorandum, Plaintiffs stated, *inter alia,* that the inferences drawn from the FDA's statement that it had "no experience" with the composite PFS endpoint used in the clinical trial was the same inference drawn by securities analysts following the Company, including Friedman Billings & Ramsey, whose analyst wrote, "…it appears the clinical trial design and endpoints for the SPARC study were never signed off on by the agency even though both investors and Spectrum were under the impression they had been."

10. On August 8, 2008, Defendants filed their Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint ("Reply Memorandum"). Attached to the Reply Memorandum were numerous documents never before seen by Lead Counsel. These documents supported Defendants' claim that when the FDA stated that it had "no experience" with the PFS endpoint, it did not intend its statement to be taken literally. Exhibits 11 and 12 to the Supplemental Affidavit of Bernard J. Garbutt III in Further Support of Defendants' Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint (the "Supplemental Affidavit") showed that the FDA had experience with new drug applications based on clinical trials utilizing a PFS endpoint. In their Reply Memorandum, Defendants argued that the FDA really meant that it was unfamiliar with the PFS endpoint *as Defendants defined it.*

11. On August 12, 2008, Defendants sent a letter to Lead Counsel claiming that Plaintiffs had not responded to Defendants' June 23, 2008 letter. Lead Counsel responded to Defendants' counsel that same day and explained that Plaintiffs had fully responded to Defendants' inquiry by letter dated June 25, 2008 and attached a copy of the original correspondence. At that time, Plaintiffs again asked Defendants to provide copies of any communications or other evidence that supported their assertion that the FDA had experience with new drug applications backed by clinical studies showing improved progression free survival. Annexed hereto as Exhibit D are the letters dated August 12, 2008.

12. After reviewing the Motion to Dismiss, the Reply Memorandum, the Supplemental Affidavit and accompanying exhibits attached thereto, Lead Counsel reopened its investigation. I personally reviewed the FDA's website, and for the first time saw the transcript of the July 24, 2007 hearing held by the FDA considering GPC's application for accelerated

4

approval of satraplatin. I have looked at the FDA's website on numerous occasions with respect to the investigation ongoing in the case, but this was the first time I saw the transcript. The arguments made by Defendants in their Reply Memorandum, the documents attached to the Supplemental Affidavit, and the testimony recorded in the hearing transcript convinced me that when the FDA stated it had no experience with the PFS endpoint, it did not mean that it had never considered approving a new drug supported by clinical tests showing improved progression free survival, but rather, that it had no experience with the PFS endpoint as Defendants defined it or with the manner in which Defendants proposed to test for PFS.

13.     On September 2, 2008, Lead Counsel contacted counsel for Defendants to propose the filing of an amended complaint to clarify this claim. A draft Amended Complaint was provided to counsel for Defendants, and a request was made for their consent to the filing of an amended complaint similar to the one provided. The fundamental premise of the Amended Complaint remained the same one set forth in the Consolidated Complaint: Defendants were in possession of material adverse information concerning the likelihood that the FDA would grant accelerated approval of satraplatin, but failed to disclose it.

14.     Counsel for Defendants did not consent to Lead Counsel's request. Defense counsel told me that they would agree to the filing of a new complaint that deleted the claim that the FDA told Defendants that it would not approve satraplatin if PFS served as an endpoint for the trial, but would not agree to the filing of an amended complaint that provided an alternative explanation for the FDA's statement that it had "no experience" with the PFS endpoint.

15.     On September 5, 2008, Lead Counsel sent a letter to the Court seeking confirmation of Plaintiffs' right to amend the Complaint and to request a status conference to

5

schedule the filing of the Consolidated Amended Class Action Complaint and Defendants' responsive pleadings. Annexed hereto as Exhibit E is the letter dated September 5, 2008.

16. On September 17, 2008, Defendants responded with a letter to the Court, arguing that: (1) leave of Court should be required to amend the Complaint; and (2) the Court should deny Plaintiffs' request to amend. Annexed hereto as Exhibit F is the letter dated September 17, 2008.

17. On September 22, 2008, Lead Counsel sent a second letter to the Court requesting further consideration of Plaintiffs' request for leave to file an amended complaint. Annexed hereto as Exhibit G is the letter dated September 22, 2008.

18. On September 23, 2008, the Court issued an Order stating that the September 5, 2008 letter was "construed as a request for leave to file an amended complaint" and denied the request because "defendants' motion to dismiss [was] pending."

19. On September 24, 2008, the Court wrote that Plaintiffs' September 22, 2008 letter had arrived after the Court issued its September 23, 2008 Order, but would be taken into account when it decided Defendants' then pending motion. Annexed hereto as Exhibit H is a copy of the Court's directive.

20. By Opinion dated February 13, 2009, the Court issued an Order denying Defendants' Motion to Dismiss. Annexed hereto as Exhibit I is the Order dated February 13, 2009.

21. On February 18, 2009, Defendants sent a letter to Lead Counsel advising that the Court's February 13, 2009 Order was based on allegations in the Complaint that were improper and demanded that Plaintiffs take immediate action with the Court. Annexed hereto as Exhibit J is the letter dated February 18, 2009.

22. On February 19, 2009, Lead Counsel responded to Defendants' letter, declining to take the actions requested in Defendants' February 18, 2009 letter. The Court had not indicated in its February 13, 2009 Order that it had not taken the relevant post-motion correspondence into consideration, and Plaintiffs' counsel had no reason to believe that to be the case. Annexed hereto as Exhibit K is the letter dated February 19, 2009.

23. On March 3, 2009, Defendants moved to reconsider the Court's Order denying their Motion to Dismiss. The next day, Defendants sent a letter to the Court requesting that a pre-motion conference be scheduled to address Defendants proposed motion to strike all allegations in the Complaint to the effect that: (1) the FDA told GPC that it did not agree to GPC's use of the PFS endpoint as a basis for accelerated approval of satraplatin and; (2) the FDA had "no experience" with PFS. Annexed hereto as Exhibit L is the letter dated March 4, 2009.

24. On March 4, 2009, the Court issued an Order recognizing that it had overlooked Plaintiffs' September 23, 2008 letter and the Court's memorandum endorsement when deciding Defendants' Motion to Dismiss. The Court directed that Plaintiffs respond to the motion for reconsideration by March 18, 2009.

25. On March 11, 2009, the Court conducted a status conference with all counsel. At this conference, the Court directed Lead Counsel to file a Motion to Amend the Complaint to assert the revised allegations.

26. On March 12, 2009, the Court issued an Order vacating the February 13, 2009 opinion, granting Defendants' Motion to Dismiss and allowing Plaintiffs to move for leave to file an Amended Complaint by April 1, 2009.

27. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of April, 2009, in New York, New York.

                                          /s/ Mark S. Goldman
                                          MARK S. GOLDMAN